## P. L. NICHOL *et al. v.* COUNTY OF DAVIDSON.

1. HOMESTEAD. *Under Act of* 1868. Under the act of 1868 homestead was allowed to the head of the family, and if the husband being head of the family conveyed the land not reserving homestead, although his wife did not join in the deed, the homestead was thereby lost.

2. SAME. *Fraudulent conveyance.* Homestead right is dependent upon and attached to some right in the property, and the transfer of the property itself carries with it the right of homestead unless it is expressly reserved. A deed, therefore, by husband to wife surrendered the homestead under the act of 1868, and if said deed at the instance of creditors was set aside as fraudulent by the chancery court, the right of homestead would not revert to him, but homestead would be lost by the fraudulent conveyance. *Cowan* v. *Johnson* and *Gibbs* v. *Patton* cited and approved.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville.    W. F. COOPER, Ch.

BATE & WILLIAMS, R. L. MORRIS and ED. BAXTER for complainants.

DODD & GUILD and E. H. EAST for defendant.

EWING, Sp. J., delivered the opinion of the court.

The bill is filed by P. L. Nichol and wife and their four minor children, claiming a homestead right in realty bought by the defendant at a master's sale. The defendant demurred.

On the 4th March, 1865, P. L. Nichol bought cer-

tain lots in West Nashville, erected a dwelling house thereon, and resided in it with his family from 1866 to 1876. On April 2d, 1870, he conveyed the property to his wife, Sue M. Nichol, to her sole and separate use during the joint lives of himself and wife, to himself in fee if he survived her, and if she survived him to her for life with remainder to their children, etc., with power in her " to sell, lease, mortgage, exchange or otherwise dispose of the property," and when any of the property is sold and disposed of, says the deed, " the proceeds are to be invested on the same trusts and held as aforesaid." On July 23d, 1870, Nichol and wife joined in executing a mortgage on the property, and on September 21st, 1870, they executed a second mortgage. On May 4th, 1872, they joined in conveying the same property in trust to secure Bradford Nichol as endorser of a note of P. L. Nichol to the defendant, given to secure the debt for which the property was eventually sold, and which debt originated by the collection by P. L. Nichol, as clerk of Davidson county court, of county revenue from March 1st, 1870 to April 4th, 1870. This deed of trust, besides conveying the property, expressly waived all right to dower, equity of redemption, or right under exemption and homestead laws.

Afterwards, in a suit in the chancery court at Nashville, of P. L. Nichol and wife against one A. C. Nichol and others and under a cross-bill of defendant (the county of Davidson), the conveyance by Nichol to his wife was, by the chancellor, and afterwards on appeal by this court, declared to be void as against the

county of Davidson as a creditor, and the property ordered to be sold in satisfaction of P. L. Nichol's indebtedness to the county as aforesaid. Under the decree of this court, the property was sold on the 16th of October, 1875, and sale confirmed on the 18th of April, 1876. The complainants were in the actual use and occupation of the property at the date of the sale, as they say, as a homestead, and so remained and continued for some time thereafter. They also state that they have not since had nor have they now any other homestead. The property was surrendered, however, to the purchaser voluntarily, so far as appears. The bill alleges that the final decree in the supreme court was rendered May 18th, 1875, and that complainant, P. L. Nichol, through his attorney, sought to obtain an order of court for the allotment of a homestead, but was informed by the attorney that the court was on the eve of adjournment and would not then act upon the matter. It further alleges that said P. L. Nichol has since sought the homestead allowance from the defendant through its fiscal agent, the county judge, who has refused to allow it. To the bill contatning these allegations, the defendant filed a demurrer sufficiently specific to meet the alleged equities; the chancellor sustained the demurrer, dismissed the bill, and the case is now here upon appeal. The bill was filed the 30th of June, 1877.

By the act of March 12th, 1868, ch. 85, sec. 2, the homestead of any housekeeper or head of a family residing in this State, to the value of $1,000, consisting of a dwelling-house and out-buildings and land

appurtenant, occupied by such person as a homestead, was exempted from execution or attachment for the debts of such head of a family or housekeeper. By sec. 3d the act was made to apply as well to equitable as to legal estates. The Constitution of 1870, art. 11, sec. 11, reads thus: "A homestead in the possession of each head of a family and the improvements thereon, to the value of $1,000, shall be exempt from sale under legal process during the life of such head of a family, to enure to the benefit of the widow, and shall be exempt during the minority of the children occupying the same. Nor shall said property be alienated without the joint consent of husband and wife when that relation exists. This exemption shall not operate against public taxes, nor debts created for the purchase-money of such homestead or improvements thereon. The Constitution took effect on May 5th, 1870. On June 27th, 1870, the General Assembly repealed the act of 1868, but made provision for a homestead in accordance with the Constitution, by an act carried into the Code in secs. 2114 a to 2122 a. Under this law the homestead is made to extend to equitable as well as legal estates, and " shall not be alienated without the joint consent of husband and wife where that relation exists, to be evidenced by conveyance duly executed, as required by law for married women." It has been held in several cases by this court that the homestead right is saved as against debts which were contracted subsequent to the act of 1868, although prior to the act of 1870. So that the continuous occupancy of the property in controvers

from 1866 to 1876 as a homestead by the complainants would, if there were nothing else in the case, entitle them to the homestead right.

It seems to be conceded by counsel for complainants that the right to homestead in this case exists, if it exist at all, under the act of 1868, in the first instance; and that if it was *effectually* parted with before the adoption of the Constitution of 1870, it does not now exist. But it is denied that it had been so effectually parted with before that time. It is admitted that it may have been given up and surrendered by a deed of the head of the family valid without joining a wife under the act of 1868, and that such deed need only be in the usual form of a conveyance of land. If it be said, however, that these admissions and concessions are not made, we nevertheless regard the law to be as stated. We regard the homestead right to be one dependent upon and attached to some right in the property, and that the transfer of the property itself carries with it the right of homestead unless the latter right be expressly reserved. The homestead right cannot stand without the support of property—it would be an attribute without substance.

The law being such, it may be that the only inquiry necessary in this case will be, was the deed of P. L. Nichol to his wife purporting to convey the whole property, a deed to all intents and purposes valid and sufficient to pass from him his homestead right at a time when his wife and children had no legal interest in that right? If he had then had no

creditors, the deed would undoubtedly have passed such a right, and he could in no way and under no contingency have claimed it. It is not insisted that his wife could claim it, as she was not the head of a family. The right in him was simply lost in the transfer, as if the property had been conveyed to a stranger who was not the head of a family, or who had no possession to sustain a homestead right.

It is said, however, that though the deed might have been valid and effectual to pass the homestead right if there had been no creditors, that in fact there was a creditor and that this creditor took effectual action against the deed and had it set aside, and that the deed was thenceforward to be regarded as a nullity, and that especially in this case the creditor, who is also the purchaser of the property, is estopped from denying the nullity of the deed, and that Nichol now stands in regard to the property as if the deed had never been made. To these views we cannot give our assent. The deed of Nichol to his wife was, to all intents and purposes, good and valid except as to creditors, who were simply allowed to disregard it so far as they were concerned. The title to the property was in Mrs. Nichol according to the terms of the deed to her, subject only to the payment of such debts as might be asserted against it. As much in her as. if there had been a lien upon the property which might be paid off. The principle upon which property fraudulently conveyed is subject to the payment of debts, is merely that of *non obstante*. To be sure, if the property be sold for the debt and there is any

one who being the head of a family is in possession of the homestead, his right would not be reached. But being the head of a family and merely living in the house is not being in possession of a homestead.

The case of *Cowan* v. *Johnson,* MS., Knoxville, (cited by Judge Cooper in *Gibbs* v. *Patton,* 2 Lea, 183, as reported in 2 Law & Eq. Reports, 78), has been cited here in support of the doctrine that by the fraudulent conveyance the homestead right was lost. This was a case arising under conveyances made after the adoption of the Constitution and the statute of 1870, in regard to homestead. In that case husband and wife made a conveyance to the wife's father, who afterward reconveyed to the wife; both of these conveyances were held to be void as to creditors and homestead was denied the wife. Judge Lea, who gave the opinion in the case, says: "When the wife executed and acknowledged the deed, although fraudulently done by her husband, she thereby parted with the right to homestead, and the fact that the land was fraudulently conveyed back to her, will not entitle her to homestead." The principle of this case, if it be law, applies here. Indeed the case now before us stands even upon stronger ground than that, as it is the husband who loses the right here—the guilty party in the fraudulent conveyance. But this case has been severely criticized by the complainant's counsel, and its authority denied. It is said that its force has been broken by other and subsequent decisions. The cases of *Rucks* v. *Hooke,* 3 Lea, 305, and of *Gibbs* v. *Patton,* 2 Lea, 183, and the remarks of the author of Milli-

ken's Digest, p. 1604, are referred to as impugning the correctness of the opinion in *Cowan* v. *Johnson.* Upon looking into the opinions in the cases referred to, we are at a loss to see upon what grounds they have been supposed to weaken the force of *Cowan* v. *Johnson.* The learned judge who wrote the opinion in the case of *Rucks* v. *Hoke,* a case where the wife at the utmost only accepted a fraudulent conveyance, ·says: " Without discussing the correctness of that de-·cision (*Cowan* v. *Johnson*), resting as it does perhaps on an estoppel on her part, or it may be on the ground of active participation in attempted fraud by the wife, we distinguish this case from that, on the ground that the wife has not participated in any fraud." No further reference is made to the case of *Cowan* v. *Johnson.* In the case of *Gibbs* v. *Patton,* the judge says: " This State, it will be seen, has ranged itself with those States which hold that such a conveyance estops the husband and wife from claiming a homestead ": citing *Cowan* v. *Johnson.* " And notwithstanding the larger array of authorities on the other side, I am not prepared to say that the decision is not founded in purer ethics in that it visits fraud with severer ; penalties." If the case of *Cowan* v. *Johnson* stood alone upon the idea that the loss of homestead right was a penalty for participation in fraud, there would seem to be some hardship in it ; much greater than in the present case, where the loss falls upon the husband· who claims under the act of 1868, when the wife had no recognized rights—the husband who is always the chief perpetrator of the fraud.

The strongest ground against the claim of homestead in this case is, that by the conveyance the homestead right ceases to exist in the maker of the deed, and can only be brought into life on behalf of the conveyee by his occupancy of the land as the head of a family, or by his conveying to another who being the head of a family shall occupy the land. But if the creditor before this union of title, of headship and occupancy shall take place, have the land sold, the purchaser cannot be disturbed when once in possession; for no one either has or ever can have the homestead right against him. This principle and consequence of course depends upon another which has been already stated, that the conveyee under a fraudulent conveyance gets a title which is good, valid and complete except against the claims of creditors. In this case, P. L. Nichol by his conveyance to his wife parted with his right of homestead, as he would have done to a stranger if the conveyance had been to him. After that, his occupancy had no estate to support it. His wife had no recognizable right under the act of 1868, and acquired none under the Constitution and act of 1870, because she was not the head of a family, nor was she the wife of one who had by occupancy a homestead right.

It will be seen, by reference to the briefs and arguments for complainants in this case, that much of their ingenuity and most of their authorities are adduced upon the assumption that the fraudulent conveyance was a nullity, and that this out of the way, the the right of homestead revived in the conveyor, or

that he or his wife or the two together, acquired some new rights under the Constitution of 1870 and the act following it. We deem it unnecessary to examine and criticize the authorities of other States seeming to have a bearing on this case. There is no case perhaps precisely analogous to it, and we are satisfied to rest this case upon principle and the case of *Cowan* v. *Johnson,* already decided.

Nothing is said in this opinion as to the effect of the decree and sale and the failure of complainants to set up their claim before the final decree in the case of *Nichol* v. *Nichol,* and the surrender of possession of property, and nothing is intended to be decided on that subject. The decree of the chancellor will be affirmed.

The demurrer will be sustained and the bill dismissed with costs.